**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 97-30685
_____


MARK BURTON,

Plaintiff-Appellee,

VERSUS


PAN-AMERICAN LIFE INSURANCE COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(95-CV-345)
_____
June 10, 1998

Before DAVIS, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

In this ERISA case, Pan American Life Insurance Co. ("Pan American") challenges the district court's conclusion that Pan American's health insurance policy was in effect during the period at issue and that Pan American was responsible for medical expenses incurred by appellees. We disagree with the district court that the policy was in effect and reverse and render judgment for Pan American.

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Mark Burton and his wife were participants in a welfare plan established and maintained by Burton's employer, C&S Window Company, Inc. ("C&S"). C&S contracted with Pan-American to provide certain health care benefits to the beneficiaries of the plan. Pursuant to an Application and Subscription Agreement, C&S was obligated to remit premiums for all persons covered by the plan on or before the first day of each month. The plan, however, provided for a 31-day grace period for the payment of premiums.

On or about September 23, 1994, Mrs. Burton was admitted to a hospital for a hysterectomy. Prior to the performance of the operation, the hospital was advised by Pan American's third-party claims administrator that benefits were payable only if her premium were current. Mrs. Burton incurred medical expenses in the amount of $13,675.00. Of that amount, the plan would have paid $12,360.71 if coverage had been in effect. C&S, however, failed to remit premiums due on September 1, 1994. On October 4, 1994, C&S was notified that its September premiums had not been received and that the grace period for the receipt of same had expired, resulting in termination of coverage effective September 1, 1994. Pan American thereafter denied payment of the medical expenses incurred by Mrs. Burton.

Burton filed suit against Pan American seeking payment under the plan. The case was submitted to the district court upon a stipulated record. The district court issued a Memorandum Ruling

awarding Burton $12,360.71 in damages, $12,360.71 in statutory penalties, plus attorneys' fees.

## II.

### A.

The district court concluded that coverage was in effect at the time Mrs. Burton incurred her medical expenses and therefore rendered judgment in favor of Burton. The court's conclusion was based on its interpretation of Article II, Section 11 of the plan, which provides as follows:

> Your Sponsor has a 31 day grace period for the payment of each premium due after the first premium. Your coverage pursuant to Your Sponsor's Application and Subscription Agreement will continue in force during the grace period unless Your Sponsor has given Us [Pan American] prior written notice of termination. If such a premium is not paid by the end of the grace period, all such insurance will end as of the due date of such premium.

In its order denying Pan American's motion for a new trial, the district court concluded that the last two sentences of Article II, Section 11 are contradictory and that therefore the provision is ambiguous. Accordingly, the court applied the rule of *contra proferentum,* which requires that an ambiguous provision be strictly construed in an insured's favor, and concluded that coverage continued during the grace period.

Pan American argues that the language of the provision is unambiguous and clearly provides that while coverage will continue during the grace period, if the premium is not paid by the end of the grace period, coverage will terminate as of the date on which

3

the delinquent premium was originally due.  We agree with Pan American's reading of the policy.  The first sentence of Article II, Section 11 refers to a due date for the premium.  The last sentence provides that if a delinquent premium is not paid by the end of the grace period, coverage will terminate as of the "due date" of that premium.  Thus, the "due date" in the last sentence plainly refers to the original due date of the delinquent premium as provided in the first sentence.  The last sentence does not provide that coverage will terminate as of the end of the grace period.  Pan American certainly could have included such a provision but it did not.  Instead, it granted a thirty-one day grace period on condition that the premium be paid by the end of that grace period.  Failure to pay the premium by that date resulted in termination of the policy effective on the due date of the premium.

B.

As an apparent alternative basis for its decision to award damages to Burton, the district court noted in its Memorandum Ruling that it found merit to Burton's contention that he was statutorily entitled to notice of termination.

Pan American argues that the court was wrong because: 1) state law does not provide for notice of termination under the circumstances presented here; and 2) the state law on which Burton

4

purported to rely is preempted by ERISA.[1]

La. R.S. 22:636(F) provides in pertinent part:

No insurer shall cancel or refuse to renew any policy of group or family group health and accident insurance **except for nonpayment of premium** . . . until sixty days after the insurer has mailed written notice of such a cancellation or nonrenewal by certified mail to the policyholder.

(emphasis added).

Burton relies on *Carr v. Port Ship Serv., Inc.,* 406 So.2d 632, 634-35 (La. Ct. App. 1981), in which the court held that an employer had a duty to notify an employee of the termination of his benefits because the employer was considered the agent of the insurer. It is not clear from that decision, however, why the plaintiff was entitled to notice of termination. Moreover, *Carr* was decided before La. R.S. 22:636(F) was enacted.[2] Burton does not cite any other authority for the proposition that he was entitled to notice before his coverage could be terminated. Thus, pretermitting Pan American's argument that La. R.S. 22:636(F) is preempted by ERISA, we conclude that Burton was not entitled to notice of termination.

## C.

Pan American argues that the district court erred in awarding attorney's fees under La. R. S. 22:657 because that statute is pre-

---

[1] It is undisputed that the plan at issue is covered by ERISA.

[2] La.R.S. 22:636(F) was effective September 7, 1990.

5

empted by ERISA.  We need not consider this argument because our conclusion that Burton is not entitled to recover damages prevents his recovery of fees under the Louisiana statute.

III.

For reasons stated above, the judgment of the district court is reversed and a take nothing judgment is rendered in favor of Pan American.

REVERSED and RENDERED.